1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6
7
8
9
10
11

ERIC ANDREW MCGAUGH,

                    Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

Case No. 3:15-cv-05900-KLS

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS

12
13
14
15
16

      Plaintiff has brought this matter for judicial review of defendant's denial of his

applications for disability insurance and supplemental security income (SSI) benefits. The parties

have consented to have this matter heard by the undersigned Magistrate Judge.[1] The Court finds

defendant's decision to deny benefits should be affirmed.

17

FACTUAL AND PROCEDURAL HISTORY

18
19
20
21
22
23

      Plaintiff applied for disability insurance and SSI benefits alleging he became disabled

beginning July 1, 2010, due to chronic low back pain, multiple pelvic fractures, and deep vein

thrombosis (DVT).[2] His applications were denied on initial administrative review and on

reconsideration.[3] At a hearing held before an Administrative Law Judge (ALJ) plaintiff appeared

and testified, as did a medical expert and a vocational expert.[4]

24
25
26

[1] 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13.

[2] Dkt. 9, Administrative Record (AR), 17, 99.

[3] *Id.* at 17.

[4] AR 37-96.

ORDER - 1

In a written decision, the ALJ found plaintiff could perform other jobs existing in significant numbers in the national economy and therefore not disabled.[5] The Appeals Council denied plaintiff's request for review of that decision, making it the final decision of the Commissioner, which plaintiff then appealed to this Court.[6]

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits, or in the alternative for further administrative proceedings, arguing the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in discounting plaintiff's credibility; (3) in failing to find plaintiff's impairments met or medically equaled a listed impairment; (4) in assessing plaintiff's residual functional capacity (RFC); and (5) in finding plaintiff was capable of performing other jobs existing in significant numbers in the national economy. The Court disagrees that the ALJ erred as alleged, and therefore affirms the decision to deny benefits.

DISCUSSION

The Commissioner's determination that a claimant is not disabled must be upheld if the "proper legal standards" have been applied, and the "substantial evidence in the record as a whole supports" that determination.[7] "A decision supported by substantial evidence nevertheless will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision."[8] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[9] The Commissioner's findings will be upheld

---

[5] AR 17-31.

[6] AR 1; 20 C.F.R. § 404.981; Dkt. 3.

[7] *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991).

[8] *Carr*, 772 F.Supp. at 525 (citing *Brawner v. Sec'y of Health and Human Sers.*, 839 F.2d 432, 433 (9th Cir. 1987)).

[9] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193.

ORDER - 2

1    "if supported by inferences reasonably drawn from the record."[10]

2         Substantial evidence requires the Court to determine whether the Commissioner's

3    determination is "supported by more than a scintilla of evidence, although less than a

4    preponderance of the evidence is required."[11] "If the evidence admits of more than one rational

5    interpretation," that decision must be upheld.[12] That is, "[w]here there is conflicting evidence

6    sufficient to support either outcome," the Court "must affirm the decision actually made."[13]

7

8    I.    The ALJ's Evaluation of the Medical Evidence

9         The ALJ is responsible for determining credibility and resolving ambiguities and

10   conflicts in the medical evidence.[14] Where the evidence is inconclusive, "questions of credibility

11   and resolution of conflicts are functions solely of the [ALJ]."[15] In such situations, "the ALJ's

12   conclusion must be upheld."[16] Determining whether inconsistencies in the evidence "are material

13   (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical

14   opinions "falls within this responsibility."[17]

15

16        In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

17   "must be supported by specific, cogent reasons."[18] The ALJ can do this "by setting out a detailed

18   and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

19

20

21   _____

     [10] *Batson*, 359 F.3d at 1193.

22   [11] *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

     [12] *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

23   [13] *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

24   [14] *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

25   [15] *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

     [16] *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).

26   [17] *Id.* at 603.

     [18] *Reddick*, 157 F.3d at 725.

ORDER - 3

thereof, and making findings."[19] The ALJ also may draw inferences "logically flowing from the evidence."[20] Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion."[21]

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician.[22] Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."[23] However, the ALJ "need not discuss *all* evidence presented" to him or her.[24] The ALJ must only explain why "significant probative evidence has been rejected."[25]

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant.[26] An ALJ need not accept the opinion of a treating physician, though, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole."[27] An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician."[28] A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence

---

[19] *Id.*

[20] *Sample*, 694 F.2d at 642.

[21] *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

[22] *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

[23] *Id.* at 830-31.

[24] *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).

[25] *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

[26] *See Lester*, 81 F.3d at 830.

[27] *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

[28] *Lester*, 81 F.3d at 830-31.

ORDER - 4

in the record."[29]

  A.  <u>Nurse Henry</u>

    1.  <u>March 2014 Declaration</u>

  Plaintiff's treating nurse, Kathleen Henry, ARNP, offered several opinions concerning

plaintiff's functional limitations and ability to work, all of which the ALJ rejected. First, plaintiff

challenges the ALJ's rejection of a declaration Nurse Henry made in March 2014:

> [Nurse Henry] opined that [a May] 2012 lumbar MRI confirmed pressure on
> [plaintiff's] nerves doing down the right leg, which made it difficult for him to
> sit or stand for a prolonged period of time, walk, and bend. She noted that his
> pain complaints were reasonable based on the MRI. However, the MRI
> actually was interpreted to show only possible bilateral far lateral
> impingement of the exiting nerve roots. She opined that the chronic pain in his
> legs from DVT together with the back pain prohibited him from working. This
> opinion is beyond ARNP Henry's expertise. Additionally, the MRI showed
> only mild to moderate findings and a *possible* finding of nerve root
> impingement and the DVT condition was considered resolved at one point but
> overall had not been a real problem. She limited standing to two out of eight
> hours but this is inconsistent with the need to move around to prevent DVT
> according to [medical expert Eric Scmitter, M.D.] She opined that he needed
> to lie down for four out of eight hours but this is inconsistent with the findings
> in [the evaluation report of David Millett, M.D.], the analysis and testimony
> provided by the medical expert, and the record of evidence as a whole.
> Moreover, she indicates that he has had recurrent instances of DVT but there
> is no record of this, except for one nonocclusive thrombus in July 2012.
> Therefore, this opinion is given little weight.[30]

  Plaintiff argues the ALJ selectively cited to the May 2012 MRI report, asserting the ALJ

ignored the radiologist's "observation of nerve root impingement based upon 'contact' with the

nerve."[31] But it is not at all clear this was what the radiologist concluded, given the radiologist's

actual finding:

  Images *suggest* lateral impingement on the right and, to a lesser degree, on the

---

[29] *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

[30] AR 29 (emphasis in original).

[31] Dkt. 11, p. 5.

ORDER - 5

left. Disc material *contacts but does not deform* the descending S1 nerve root within the canal.[32]

Further, the radiologist's impression was only "*possible* bilateral far lateral impingement of the exiting nerve roots."[33] Indeed, Dr. Schmitter, a board-certified orthopedic surgeon, testified that he saw "no evidence" in the MRI of a neurological deficit.[34] Accordingly, the Court also rejects plaintiff's claim that the ALJ did not consider the entire MRI report or, for the reasons set forth below, that he failed to view the record as a whole.

Plaintiff asserts Dr. Schmitter ignored evidence of neurologic dysfunction in the record, such as abnormal gait, back pain, leg numbness, radiating leg pain, and reduced spinal range of motion. First, plaintiff fails to show Dr. Schmitter *ignored* such evidence. Rather, Dr. Schmitter evaluated the record, but found no such evidence.[35] Second, plaintiff points to no opinion from any acceptable medical source indicating or suggesting a finding of neurological dysfunction. Plaintiff asserts evidence of neurologic dysfunction is in the report of evaluating orthopedist, David Millett, M.D., but Dr. Millet never indicated that he found neurological dysfunction on examination.[36] Third, while Nurse Henry may have interpreted the MRI as meaning plaintiff had "some pressure on his nerves" resulting in pain and dysfunction,[37] and even though she is a treating source, Dr. Schmitter is both an acceptable medical source and a specialist, and thus the ALJ did not err in giving his interpretation of the MRI greater weight.[38]

---

[32] AR 707 (emphasis added).

[33] *Id.* (emphasis added).

[34] AR 46, 50; *see also* AR 68.

[35] AR 49-53, 55-56, 68.

[36] AR 640-45.

[37] AR 770.

[38] *Benecke v. Barnhart*, 379 F.3d 587, 594 n.4 (9th Cir. 2004); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996); 20 C.F.R. § 404.1513(a), (d), § 416.913(a), (d); Social Security Ruling (SSR) 06-03p, 2006 WL 2329939, at *5.

ORDER - 6

Plaintiff goes on to argue that the radiologist recommended "[c]linical correlation" of the above MRI findings.[39] But it appears the radiologist was recommending such correlation only in regard to the additional findings of edema and inflammatory process.[40] Even if this was not the case, the Court disagrees that the ALJ erred in failing to find clinical correlation in the treatment notes indicating the presence of abnormal gait, back pain, leg numbness, radiating leg pain, and reduced spinal range of motion.[41] Plaintiff argues that contrary to Dr. Schmitter's testimony, this evidence establishes the existence of neurological dysfunction, including motor weakness, motor and muscle atrophy, and sensory loss. But while there are some notations of motor weakness and sensory loss in the record, overall plaintiff has failed to establish the connection,[42] particularly in light of the opinions of  Dr. Millett and Dr. Schmittier, both orthopedic specialists, regarding the lack neurological deficit or evidence of orthopedic restrictions.[43]

Plaintiff agrees that the ALJ did not have to find him disabled based on Nurse Henry's opinion that his pain "prohibits him from being able to work,"[44] but argues the ALJ still was required to consider the opinion and not simply disregard it. However, this was merely one of the reasons the ALJ gave for rejecting Nurse Henry's declaration. Given that as discussed herein the other reasons the ALJ offered were not improper, he did not err in relying on this reason as well. Further, although it may be that "pain is a highly idiosyncratic phenomenon" and that claimants are "entitled to an individualized determination of the effects of their condition,"[45] plaintiff has

---

[39] AR 707.

[40] *Id.*

[41] *See* Dkt. 11, p. 6 (citing medical record).

[42] AR 390, 454-56, 461, 473-75, 482, 487-88, 498, 704, 714, 718, 725, 727, 730, 733, 736.

[43] AR 50-51, 68, 642-45.

[44] AR 770-71; 20 C.F.R. § 404.1527(d)(1).

[45] Dkt. 11, p. 7 (quoting *Howard v. Heckler*, 782 F.2d 1484, 1488 (9th Cir. 1986); *O'Leary v. Schweiker*¸710 F.2d 1334, 1342 (8th Cir. 1993)).

ORDER - 7

not shown that the ALJ failed to take these considerations into account.

Plaintiff argues the ALJ erred in finding no support in the record for "recurrent instances of DVT," pointing to medical records from 2003 through 2004, and 2006 through 2009, showing treatment for that condition.[46] Those records, however, are for the period well before the alleged onset date of disability, and plaintiff has not shown how they relate to the period the ALJ was required to consider. Plaintiff further argues the ALJ overlooked Nurse Henry's statement that his last DVT recurrence was in July 2012, resulting in residual symptoms and limitations.[47] But the ALJ was not remiss in characterizing this instance of DVT as an exception to a record that is otherwise devoid of such occurrences during the relevant period.

The ALJ also was not remiss in finding Nurse Henry's two-hour standing limitation was inconsistent with Dr. Schmitter's testimony concerning the need to move around for individuals with DVT. Indeed, Dr. Schmitter emphasized the necessity of having activity such as walking,[48] which is at odds with a limitation to two hours of standing. Plaintiff argues the ALJ was further remiss in relying on Dr. Millett's report in rejecting Nurse Henry's opinion that he would need to lie down for four hours a day, because Dr. Millett did not have access to the May 2012 MRI, and thus was unaware of the ramifications of his back impairment. But Dr. Millett had access to his own objective examination findings, which by themselves constitute substantial evidence, and therefore were sufficient to support his conclusions.[49] Accordingly, Dr. Schmitter's adoption of Dr. Millett's conclusions cannot be impugned on this basis.

Plaintiff suggests Dr. Millett's opinion should be discounted because he is an orthopedic

---

[46] AR 29; Dkt. 11, p. 7 (citing AR 564-66, 575, 655-91).

[47] AR 770-71.

[48] AR 59-60, 63.

[49] AR 642-45; *Tonapetyan*, 242 F.3d at 1149.

surgeon, and thus does not have the necessary specialization to address treatment protocols for

chronic venous insufficiency (CVI) or DVT issues. But as Dr. Schmitter explained in terms of

*his* qualifications:

> [I]n terms of deep vein thrombosis, obviously I know more than a little bit
> about it because in orthopedics, we're very concerned particularly when we do
> lower extremity -- deep vein thrombosis is almost uniquely in the lower
> extremity, and although technically it's not really orthopedics we see -- we're
> concerned about it, and we certain [sic] know about anticoagulation and the
> potential for promulgating migratory thrombosis and even fatal disease, so I
> know a fair amount about it.[50]

Given the nature of orthopedics as described by Dr. Scmitter, it is highly likely Dr. Millett has

the same or a similar level of experience in this area. Last, plaintiff criticizes Dr. Schmitter for

finding no evidence of nerve impingement, but as discussed above the substantial evidence in the

record supports his testimony in this regard.

### 2.    April 2012 Opinion

The ALJ also rejected Nurse Henry's earlier opinions concerning plaintiff's limitations,

including her April 2012 opinion that plaintiff would have difficulty sitting and standing for

more than one hour at a time, and that he was "unable to sit or stand for prolonged periods of

time."[51] The ALJ gave this opinion "little weight" because:

> [I]t is not exactly a function-by-function analysis and it is not clear how long
> "prolonged periods of time" are. Dr. Schmitter's detailed explanation that the
> past pelvic and wrist injuries had healed well and were of little consequence
> and his citation to the May 2009 record that the pelvis caused no problems is
> more reliable than this unclear statement by ARNP Henry. This opinion is
> also contradictory in that sitting and standing are found to be significantly
> limited by orthopedic injuries but these same orthopedic injuries did not
> significantly limit lifting. Concurrent treatment notes showed the claimant had
> no medical care for the past couple of years and was able to perform a toe
> walk on the left but not on the right, a heel walk bilaterally, and a moderately
> deep squat. Moreover, the claimant denied in July 2012 back pain, myalgias,

---

[50] AR 47.

[51] AR 700.

ORDER - 9

arthralgias, focal weakness, or sensory changes (Ex. 4F/15).[52]

The Court agrees with plaintiff that the ALJ erred in finding Nurse Henry's specific limitation in sitting, standing, and lifting do not constitute a function-by-function analysis, and in finding the limitations on lifting necessarily contradict Nurse Henry's opinion regarding plaintiff's ability to sit or stand. On the other hand, the ALJ did not err in relying on Dr. Schmitter's explanation that plaintiff's pelvic injuries were well healed and caused no problems, given that Dr. Schmitter was of the opinion that plaintiff's orthopedic issues emanated from those injuries.[53]

### 3.   October 2012 Opinion

In October 2012, Nurse Henry opined that plaintiff was "unable to return to work with chronic disability."[54] The ALJ found this opinion "deserves little to no weight since it is merely a conclusory statement without function-by-function analysis," treatment records "revealed only mild to moderate findings at most," and it is "a vocational opinion."[55] Plaintiff does not argue the ALJ erred in rejecting Nurse Henry's opinion because it was conclusory[56] or involved vocational considerations, an area reserved to the Commissioner.[57] Rather, plaintiff argues the ALJ failed to consider the record as a whole that supports that opinion. As discussed above, however, the ALJ did not err in finding the medical evidence overall did not provide such support.

### 4.   March 2013 Letter

In a March 2013 letter, Nurse Henry opined that plaintiff was "permanently physically

---

[52] AR 28.

[53] AR 49.

[54] AR 475.

[55] AR 28.

[56] *Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957; *Tonapetyan*, 242 F.3d at 1149.

[57] 20 C.F.R. § 404.1527(d)(1).

ORDER - 10

disabled" and "unable to return to work."[58] The ALJ rejected this opinion because it "was

conclusory and categorical rather than functional" and thus "was of little usefulness."[59] Plaintiff

does not disagree with the ALJ's finding that this opinion was conclusory, but argues it was at

least consistent with her previous conclusions that he could not work. But given that the ALJ did

not err in rejecting those earlier opinions, the March 2013 letter is of little help to plaintiff here,

particularly given its conclusory nature.

B.    Dr. Millett

In December 2013, Dr. Millett examined plaintiff, opining that he "does not have any

basis for restricted activity," and that there "is no reason why [he] cannot work on a regular and

continuing basis eight hours a day, five days a week, although he may require some exercise to

counteract his inactivity before doing so."[60] The ALJ gave this opinion "great weight" due to its

consistency with plaintiff's "outcome as a result of treatment for his orthopedic impairments,

which is supported by [treatment notes from 2003 to 2004, and Dr. Millett's evaluation report],

as well as the longitudinal record."[61] The ALJ also stated that Dr. Millett's opinion "deserves

more weight than" Nurse Henry's, "because he is an orthopedic specialist and an acceptable

medical source."[62]

Plaintiff argues the ALJ improperly relied on treatment notes from 2003 to 2004, but

those notes do show the positive outcome from treatment the ALJ mentions, and the record fails

to show that outcome worsened during the relevant time period.[63] While it is true that the ALJ

---

[58] AR 313.

[59] AR 29.

[60] AR 644-45.

[61] AR 27.

[62] *Id.*

[63] *See* AR 550, 552, 567, 569, 571, 573, 575, 579-80, 586-88, 595-96, 600-02, 610-19, 621, 624, 626-38.

ORDER - 11

referred to Dr. Millett's own evaluation report in adopting Dr. Millett's opinion, the objective findings in that report are largely unremarkable, and thereby support Dr. Millett's conclusions. As such, it is not unreasonable to infer that it was this aspect of Dr. Millett's report the ALJ was referring to in his decision, rather than merely the conclusions themselves.[64]

Nor should Dr. Millett's opinion be called into question solely because he did not review the May 2012 MRI, given that he examined plaintiff himself and based that opinion on his own objective findings.[65] Further, since the evaluating radiologist described plaintiff's multilevel disc degenerative changes as "mild – moderate" in terms of its greatest level of severity,[66] the ALJ did not impermissibly act as his own medical expert in determining that Dr. Millett's opinion was consistent with the diagnostic imaging.[67] Indeed, plaintiff appears to do just that in arguing Dr. Millett's notation that plaintiff had "back discomfort" with straight leg raising "equate[s] to a 'clinical correlation' with nerve root impingement," when Dr. Millett gave no such indication in his evaluation report.[68]

Finally, plaintiff argues the ALJ failed to adequately explain why the ALJ rejected the occasional to frequent limitations Dr. Millett assessed in plaintiff's ability to push/pull. Reach, handle, finger, and feel in his left hand.[69] The ALJ gave those limitations "no weight" because plaintiff's injury "was to his right wrist not left, which has no pathology."[70] Plaintiff does not

---

[64] *Magallanes*, 881 F.2d at 755.

[65] AR 642-45; *Tonapetyan*, 242 F.3d at 1149.

[66] AR 707.

[67] AR 27; *Gonzalez Perez v. Sec'y of Health and Human Serv*s., 812 F.2d 747, 749 (1st Cir. 1987); *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2nd Cir. 1983); *Gober v. Mathews*, 574 F.2d 772, 777 (3rd Cir. 1978).

[68] AR 643-45; Dkt. 11, p. 12 (citing http://www.webmd.com/a-to-z-guides/straight-legl-test-for-evaluating-low-back-pain-topic-overview).

[69] AR 648.

[70] AR 27.

ORDER - 12

challenge this basis for the ALJ's rejection. The ALJ went on to state that:

> In the event Dr. Millett meant the claimant's right wrist, Dr. Schmitter's summary of the evidence reflected an excellent outcome after treatment, which is supported by the claimant's right wrist having generally good range of motion in [Dr. Millett's evaluation report]. Moreover, there is no evidence of shoulder pathology to support the overhead reach limitation on the left upper extremity.[71]

Plaintiff asserts it was error for the ALJ to rely on Dr. Schmitter's testimony, given his status as a non-examining physician. But as the ALJ points out, Dr. Schmitter's testimony is consistent with the weight of the medical evidence in the record – including Dr. Millett's own findings regarding plaintiff's right wrist – a finding which again plaintiff has not challenged, and Dr. Schmitter, like Dr. Millett, is a specialist in orthopedic surgery.[72]

### C.   Dr. Schmitter

Plaintiff argues the ALJ erred in relying on Dr. Schmitter's testimony, asserting he did not have access to all of the medical exhibits in the record, including Nurse Henry's March 2014 declaration. As discussed above, though, the ALJ properly rejected that declaration, and plaintiff does not explain how the exhibits Dr. Schmitter did not have access to undermine his testimony. Plaintiff also faults Dr. Schmitter for not acknowledging the evidence of neurologic dysfunction in the treatment records and in Dr. Millett's evaluation report. But as discussed above, the record does not support the existence of such dysfunction. Plaintiff further faults Dr. Schmitter for testifying that he did not pay a lot of attention to evidence of CVI in the record, that he did not have the expertise to discuss CVI, and that his testimony was limited to orthopedic issues. The Court is not persuaded.

First, while Dr. Schmitter did testify that he "didn't pay a lot of attention" to plaintiff's

---

[71] *Id.*

[72] AR 55-56, 643; *Tonapetyan*, 242 F.3d at 1149; *Morgan*, 169 F.3d at 601; *Lester*, 81 F.3d at 830-31; *Sample*, 694 F.2d at 642.

ORDER - 13

pitting edema because "it's a little bit out of the orthorpedic realm," Dr. Schmitter was aware of that condition.[73] In addition, plaintiff has not shown his pitting edema has resulted in functional limitations greater than those found by the ALJ. Second, Dr. Schmitter never testified that he was not an expert in CVI.[74] He did testify that he was "[n]ot truly" an expert in deep vein thrombosis, but that he was very familiar with it given his specialty is orthopedics and that it is a condition that "is almost uniquely in the lower extremity."[75] Accordingly, the ALJ did not err in relying on Dr. Schmitter's testimony.

D.    Dr. Hoskins and Dr. Staley

The ALJ found the limitation to sedentary work assessed by state agency non-examining physicians Robert Hoskins, M.D., and Norman Staley, M.D., was "not warranted because it is not consistent with the objective medical evidence of record," including the May 2012 MRI that neither physician reviewed.[76] Plaintiff argues this was improper because Dr. Millett did not have access to that MRI, yet the ALJ gave his opinion great weight. But as discussed above, the ALJ was not remiss in finding the mild to moderate MRI findings were consistent with Dr. Millet's opinion. Not surprisingly the ALJ reasonably found those same findings were inconsistent with the more restrictive sedentary limitation Drs. Hoskins and Staley assessed. Once more plaintiff asserts Dr. Schmitter and the ALJ overlooked evidence of nerve impingement in the record and failed to adequately address plaintiff's vascular issues. For the reasons discussed above, though, those assertions are without merit.

---

[73] AR 63.

[74] Id.

[75] AR 47.

[76] AR 28, 103-04, 122-23.

ORDER - 14

II.      The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ.[77] The Court should not "second-guess" this credibility determination.[78] In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence.[79] That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence.[80] To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief."[81]

The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints."[82] Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."[83] In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid."[84]

The ALJ discounted plaintiff's credibility because the medical evidence in the record "does not support his allegations as to symptom severity and degree of functional limitation."[85] As the ALJ did not err in evaluating the medical evidence in the record, this basis for discounting

---

[77] *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

[78] *Allen*, 749 F.2d at 580.

[79] *Id.* at 579.

[80] *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

[81] *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).

[82] *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

[83] *Lester*, 81 F.2d at 834.

[84] *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

[85] AR 22.

ORDER - 15

plaintiff's credibility was proper.[86] Plaintiff argues the ALJ merely summarized the medical record, without explaining how it undermines his credibility. But the ALJ did more than that. He specifically noted instances where the objective findings conflict with plaintiff's allegations of disabling symptoms and limitations.[87] Further, while the ALJ may not have linked his summary to plaintiff's subjective complaints as specifically as he might have, again the Court is not without the authority to make reasonable inferences from the ALJ's decision. Those inferences point to no error on the part of the ALJ here.

The ALJ also did not err in discounting plaintiff's credibility on the basis of his "limited and sporadic work history with minimal earnings."[88] Plaintiff asserts this was improper because the credibility determination should be limited to evaluating his symptoms, and not his overall character or truthfulness. But as noted above, the Ninth Circuit has expressly stated that an ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements, and other testimony that "appears less than candid."[89] Thus, here too the ALJ did not err.

The Court does agree that it was not proper for the ALJ to discount plaintiff's credibility for elevating his leg two to two and a half hours during the day, given that plaintiff was advised by his primary care provider to keep his leg "elevated above [his] heart as much as possible.[90] In addition, because the record fails to show plaintiff engaged in household chores or other daily activities for a substantial part of his day or that are transferrable to a work setting or otherwise contradict his testimony, the ALJ erred in relying on this basis for finding plaintiff less than fully

---

[86] *Regennitter v. Comm'r of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998).

[87] AR 22-25.

[88] AR 25; *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

[89] *Smolen*, 80 F.3d at 1284.

[90] AR 488.

ORDER - 16

credible as well.[91] Nevertheless, the fact that some of the reasons for discounting plaintiff's credibility were improper does not render the ALJ's credibility determination invalid, as long as that determination is supported by substantial evidence in the record, as it is in this case for the other reasons discussed above.[92]

### III.   The ALJ's Step Three Determination

At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of the impairments set forth in the Commissioner's listed impairments (the Listings).[93] If any of the claimant's impairments meet or medically equal a Listing, he or she is deemed disabled.[94] The burden of proof is on the claimant to establish he or she meets or equals a Listing.[95] "A generalized assertion of functional problems," however, "is not enough to establish disability at step three."[96]

A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."[97] It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings" alone.[98] An impairment meets a Listing "only when it manifests the specific findings described in the set of medical criteria for that listed

---

[91] AR 74-75, 82-85, 272-75, 299, 306-10; *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Smolen*, 80 F.3d at 1284.

[92] *Tonapetyan*, 242 F.3d at 1148.

[93] 20 C.F. R. Part 404, Subpart P, Appendix 1;  20 C.F.R § 404.1520(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[94] *Id.*

[95] *Tacket*, 180 F.3d at 1098.

[96] *Id.* at 1100 (citing 20 C.F.R. § 404.1526).

[97] 20 C.F.R. § 404.1508.

[98] *Id.*; *see also* SSR 96-8p, 1996 WL 374184, at *2.

ORDER - 17

impairment."[99]

An impairment, or combination of impairments, equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed impairment."[100] "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment."[101] However, "symptoms alone" will not justify a finding of equivalence.[102]

In addition, the ALJ "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence."[103] The ALJ also need not "state why a claimant failed to satisfy every different section of the listing of impairments."[104] This is particularly true where, as noted above, the claimant has failed to set forth any reasons as to why the Listing criteria have been met or equaled.[105]

The ALJ found none of plaintiff's impairments met or medically equaled any of those contained in the Listings.[106] Plaintiff argues the ALJ erred in so finding, because the record appears to support a finding of disability under Subsection A of Listing 1.04 (disorders of the spine). But as the ALJ points out, to meet that Listing a claimant "must not only have a spine

---

[99] SSR 83-19, 1983 WL 31248, at *2.

[100] *Id.*

[101] *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original).

[102] *Id.*

[103] *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

[104] *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).

[105] *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).

[106] AR 20.

ORDER - 18

disorder, but also have evidence of nerve root compression."[107] Contrary to plaintiff's assertions, the evidence in the record does not support such a finding. Nor has plaintiff come forth with evidence to show any of his impairments or combination thereof medically equals Listing 1.04A. Accordingly, the ALJ's step three determination is without error.

IV.    The ALJ's RFC Assessment

A claimant's RFC assessment is used at step four of the sequential disability evaluation process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work.[108] It is what the claimant "can still do despite his or her limitations."[109] A claimant's RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record.[110] Inability to work, however, must result from the claimant's "physical or mental impairment(s)."[111] Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments."[112] In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence."[113]

The ALJ found plaintiff had the RFC:

**to perform light work . . . , i.e., lift/carry twenty pounds occasionally and ten pounds frequently, except light work that does not require climbing of ladders, ropes, or scaffolds; that does not require more than frequent climbing of ramps or stairs; that does not require more than occasional**

---

[107] *Id.*; 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.04A.

[108] SSR 96-8p, 1996 WL 374184 *2.

[109] *Id.*

[110] *Id.*

[111] *Id.*

[112] *Id.*

[113] *Id.* at *7.

ORDER - 19

**balancing, stooping, kneeling, crouching, or crawling; that does not require more than occasional use of the right lower extremity for pushing or pulling; and that does not require more than frequent exposure to extreme temperatures or vibrations.**[114]

Plaintiff argues this RFC assessment is erroneous in light of the ALJ's errors in evaluating the medical evidence in the record and in assessing plaintiff's credibility. But because as discussed above plaintiff has failed to establish such errors, here to the ALJ did not err.

V.      The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the sequential disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do.[115] The ALJ can do this through the testimony of a vocational expert.[116] An ALJ's step five determination will be upheld if the weight of the medical evidence supports the hypothetical posed to the vocational expert.[117] The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence.[118] Accordingly, the ALJ's description of the claimant's functional limitations "must be accurate, detailed, and supported by the medical record."[119]

The ALJ found plaintiff could perform other jobs existing in significant numbers in the national economy, based on the vocational expert's testimony offered in response to a hypothetical question concerning an individual with the same age, education, work experience

---

[114] AR 20-21 (emphasis in original).

[115] *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e).

[116] *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101.

[117] *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

[118] *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

[119] *Id.* (citations omitted).

ORDER - 20

and RFC as plaintiff.[120] Plaintiff argues the ALJ erred in his step five determination, given the ALJ's erroneous RFC assessment. Again, though, as the ALJ did not err in assessing plaintiff's RFC, he properly found plaintiff not disabled at this step.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court finds the ALJ properly determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is AFFIRMED.

DATED this 6thth day of June, 2016.



Karen L. Strombom
United States Magistrate Judge

---

[120] AR 30-31.

ORDER - 21